KENNEY and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*February 24—March 14, 1905.*

*Manslaughter: Killing in heat of passion, without design, etc.: Involuntary killing while committing assault: Preconcerted joint assault.*

The evidence in this case is *held* sufficient to sustain the conviction of the defendants of manslaughter in the third degree:— of one under either sec. 4354 or sec. 4355, Stats, 1898, and of the other under sec. 4355.

ERROR to review a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

*E. C. Alvord,* for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General* and *Walter D. Corrigan,* assistant attorney general, and oral argument by *Mr. Corrigan.*

WINSLOW, J.    One Thomas McCarty was shot and killed on the evening of the 26th of March, 1904, at a saloon in the town of Mason, Bayfield county.    The plaintiffs in error (hereinafter called the defendants) were charged with his murder, and upon trial the jury returned a verdict against both defendants of manslaughter in the third degree, and the case comes to this court upon writ of error.

There are no claims of error in the rulings upon evidence or in the charge of the court, but the broad claim is made that there was no evidence upon which a verdict of manslaughter in the third degree could be properly based, especially as to the defendant *McComb.*    There are many facts which were undisputed.    It appears that the defendants were employed in the woods, and came to the village of Mason on the morning of March 26th to attend a caucus held there on that day, and that they were together most of the day.    One Frank Taylor, an acquaintance of both defendants, was also in town that day, and met the defendants several times.    There had previously been personal difficulties between *Kenney* and Taylor, and *McComb* knew the fact.    *Kenney* procured a loaded revolver early in the day, and carried it with him, and this fact *McComb* also knew.    The defendants spent most of the day gravitating from saloon to saloon, and as evening approached they were both considerably intoxicated.    Taylor had been pursuing zealously the same line of conduct and with like results.    At about 9 o'clock in the evening all three went to the saloon of one Hogan, which had been closed for the night, and woke up the

bartender, who opened the door and let them in, and the business of the day was resumed with renewed vigor.  At this time McCarty was with them.  A row took place between Taylor and *McComb,* in the course of which Taylor slapped *McComb,* but the row went no further, and *Kenney* and *McComb* left the saloon for a time, but soon returned.  After their return there was more drinking, when the row which terminated McCarty's life started.  As to this row the accounts of the witnesses materially differ.  According to the stories of Taylor and the bartender, Scott, *McComb* began to abuse or "pick on" Taylor, who resented it and started to punish *McComb.*  While Taylor was engaged in this, *Kenney* pulled out his revolver and leveled it at Taylor and threatened to shoot him.  Taylor attempted to knock the revolver to one side, and as he did so it went off, the shot entering the brain of McCarty and inflicting a fatal wound.  According to *Kenney's* story, Taylor attacked *McComb* and struck and kicked him, and he (*Kenney*) told the bartender to stop the row, when Taylor turned and attacked him (*Kenney*) and knocked him down, whereupon he drew his revolver, not intending to shoot, but using it as a club, and in the scuffle Taylor grabbed his hand with the revolver in it and the revolver was accidentally discharged.  The fact that McCarty was shot was apparently not noticed for a little time, and the affray continued without interruption, and *Kenney* and *McComb* thoroughly pounded Taylor.  *McComb's* story of the affray was substantially similar to *Kenney's.*

The theory of the state was that *Kenney* and *McComb* had prepared themselves for the affray during the day, and that it was their intention to provoke a row and kill Taylor, and there was considerable testimony which would justify such a finding, but, as the jury found otherwise, the only question is whether, on any reasonable theory of the evidence, a finding of manslaughter in the third degree can be justified.

Sec. 4354, Stats. 1898, provides that:

"Any person who shall kill another in the heat of passion without a design to effect death, by a dangerous weapon, in any case except such wherein the killing of another is herein declared to be justifiable or excusable, shall be deemed guilty of manslaughter in the third degree."

Sec. 4355 provides that:

"The involuntary killing of a human being by the act, procurement or culpable negligence of another, while such other person is engaged in the commission of a trespass or other injury to private rights or property or engaged in an attempt to commit such injury, shall be deemed manslaughter in the third degree."

As to the defendant *Kenney* there would seem to be no serious question but that the jury might reasonably find a verdict of manslaughter in the third degree under either section. If they believed (as they were entitled to believe) *Kenney's* own story of the brutal and unprovoked attack made upon him by Taylor, there was certainly ample ground for concluding that when he drew his pistol he was in the heat of passion; and if they further believed (as he testified) that he had no design to effect death, but still believed, as they might, that he intended to shoot, and that the shooting was not justifiable or excusable, all the elements of the crime required by the first of the above-quoted sections would be present. On the other hand, if they believed (as they might) that *Kenney* was unlawfully assaulting Taylor, and, while using his pistol for that purpose, it was negligently and involuntarily discharged, the crime would be complete under the second of said sections.

As to the defendant *McComb,* it may be conceded that it would be difficult to find any reasonable theory on which he could be convicted as a principal under sec. 4354, but there is no serious difficulty under sec. 4355. There was considerable evidence tending to show that *Kenney* and *McComb* had ar-

ranged during the day to make a joint assault on Taylor in revenge for Taylor's past indignities to *Kenney,* and that the pistol was procured as a part of the plan. If such was the case, and the jury found that *Kenney* and *McComb* were acting jointly in pursuance of this arrangement, and in the course of this preconcerted joint assault the weapon was involuntarily discharged by *Kenney,* both would be equally responsible for the result of the shooting, though the pistol was handled by *Kenney* alone.

We conclude that the judgment was right as to both defendants. ·

*By the Court.*—Judgment affirmed.